NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
LEN MCLAUGHLIN,                        :
                                       :
    Plaintiff,                        :
                                       :   Civil Action No. 14-3430 (JAP) (TJB)
            v.                   :
                                       :   **OPINION**
DOW JONES, et al.,                     :
                                       :
    Defendants.                       :
_____:

PISANO, District Judge.

    Plaintiff, Len McLaughlin ("Plaintiff" or "McLaughlin"), brings this suit against Defendant Dow Jones & Company ("Dow Jones" or "Defendant"), alleging that Plaintiff was wrongly denied access to an employee grievance procedure. This matter comes before the Court on two motions. The first is a motion to remand this action to the New Jersey Superior Court, Middlesex County, brought by Plaintiff [ECF No. 8]. The second is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) brought by Defendant Dow Jones [ECF No. 6]. The Court decides this motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, the Court denies Plaintiff's motion to remand, and grants Defendant's motion to dismiss.

**I.    Background and Procedural History**

    The following allegations are summarized from the First Amended Complaint ("FAC"), and must be taken as true in deciding these motions.[1]

---

[1] *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010) ("We accept all factual allegations as true, construe the amended complaint in the light most favorable to [the plaintiff], and determine whether, under any reasonable reading of the…complaint, he may be entitled to relief.").

Dow Jones is a publisher of financial news and information.  Dow Jones is a party to a collective bargaining agreement ("CBA") with the Independent Association of Publishers' Employees ("IAPE"), a labor union representing Dow Jones employees at its Monmouth Junction, New Jersey facility, among other locations.  All Dow Jones employees in New Jersey who are in union eligible titles are included in the bargaining unit and are covered by the CBA.  *See* CBA at 2–5, *located at* Certification of Jamie Lehrer, Ex. A.  The CBA includes a union security clause that requires all employees in the bargaining unit to pay IAPE membership dues or an equivalent administration fee, or else face termination.  *See id.* at 32.  The CBA also includes a detailed grievance and arbitration procedure, which grants IAPE the right to submit grievances first to Dow Jones and then, if necessary, to a neutral arbitrator.  *See id.* at 34–35.  IAPE may invoke the grievance procedure to contest any actions by Dow Jones that it believes violates the CBA.  *See id.* at 34.

In June 2008, Plaintiff was hired by Dow Jones as an independent contractor as part of its Campus Support Team at its Monmouth Junction facility.  In September 2008, after Dow Jones had outsourced the campus support function to HCLA America ("HCLA"), HCLA independently hired McLaughlin directly and assigned him to Dow Jones.  While working at Dow Jones, Plaintiff's work was based upon work orders received from the company, and the company always had the right to assign additional projects to Plaintiff.  Plaintiff performed tasks such as installing operating systems on Dow Jones's servers or moving servers or cables within Dow Jones's network infrastructure and the infrastructure of its indirect parent company, News Corporation.  Plaintiff McLaughlin worked with Dow Jones project managers to complete his assigned tasks.

On the night of April 28, 2013, Plaintiff had an evening shift, during which he was removing cables and cleaning up equipment cabinets occupied by News Corporation.  Plaintiff was directly supervised during the shift by Rick Lewark.  Lewark advised Plaintiff McLaughlin and another

2

HCLA employee, George Wheeler, that the News Corporation equipment was not being used and was not connected.  During the shift, Wheeler and Plaintiff McLaughlin were working together during the clean-up project.  As Wheeler was removing cables, he discovered News Corporation fiber cables that were indicating a "link status."  Generally, "link status" is a green light indicator that confirms that a cable is connected between two network systems and potentially could carry traffic between said systems.  Despite this green light link status, Wheeler and McLaughlin removed the cables (thereby disconnecting News Corporation's network equipment) and cleaned the equipment cabinets occupied by News Corporation.  A few hours later, Plaintiff McLaughlin and Wheeler received an email alert from Dow Jones's Network Operations Center, alerting them that News Corporation had lost its network connection.  Plaintiff alleges that, despite the green link status light, he and Wheeler believed that the urgency of the alert was in error because Lewark had advised them that the News Corporation equipment was not being used.  Therefore, Plaintiff contacted Network Operations and informed it that the equipment was not being used and the alert must have been sent in error.  Network Operations replied with an acknowledgement of the error and removed the alert.  Plaintiff then left at 7:00 a.m. on April 29, 2013.  He found out later that afternoon that the alert he had received during his shift was, in fact, correct, and News Corporation's network access was interrupted.  Thereafter, on May 3, 2013, Plaintiff was terminated by Dow Jones.

Plaintiff McLaughlin then initiated this action in the Superior Court of New Jersey, Chancery Division, Middlesex County, by filing a complaint (the "State Court Complaint") and an order to show cause on April 2, 2014 against Dow Jones.  Dow Jones was served with the State Court Complaint on April 2, 2014.  The State Court Complaint, in its entirety, states:

> The plaintiff, Len McLaughlin, located at 379 Smith Street, Apt. #2, City of Perth Amboy, County of Middlesex, and State of New Jersey, by way of Complaint against defendant, herein says:

3

### First Count

1. On or about September 2008, the plaintiff was hired by HCLA as a full time employee assigned to work at Dow Jones.
2. While at Dow Jones, he received annual reviews with the qualifications [*sic*] of exceeds expectations.
3. In every manner of employment, the plaintiff was treated, directed, [*sic*] assigned work as all employees of Dow Jones generally working [*sic*] the area of IT.
4. The incident took place at Dow Jones on April 30, 2013 resulting in plaintiff being advised not to return to Dow Jones.
5. It is believed that Dow Jones has a system in place to govern and resolve employee, employer disputes.  Plaintiff has requested from Dow Jones that he [*sic*] be made available and permitted access to said dispute resolution system.
6. Dow Jones has responded that this system is not available to the plaintiff as he was technically a contract person through HCLA.
7. The plaintiff responds that for more than two years he was treated, governed, and directed in all respects as an employee and the defendant, Dow Jones had directed him not to return to work.

WHEREFORE, the plaintiff, Len McLaughlin, requests a court order:
(a) The Defendant, Dow Jones be ordered to permit plaintiff access and [*sic*] availability to the dispute resolution of Dow Jones.
(b) Assessing costs, legal fees and interest; and
(c) Granting suit other equitable relief as the court deems, appropriate.

*See* State Court Complaint, *located* at Certification of Harris S. Freier ("Freier Cert.") Ex A.  The State Court Complaint makes no reference to either a claim under the Employee Retirement Income Security Act ("ERISA") or a claim under the Labor Management Relations Act ("LMRA"), nor does it reference any collective bargaining agreement.

On April 24, 2014, Defendant Dow Jones sent Plaintiff a notice of frivolous litigation pursuant to New Jersey Court Rule 1:4-8.  In it, Dow Jones informed Plaintiff that "while it is not our understanding that you are asserting that Plaintiff should be entitled to the benefits under any collective bargaining agreement," Plaintiff would not be eligible for those benefits.  *See* Def.'s Notice of Frivolous Litigation Pursuant to R. 1:4-8 at 3, *located at* Freier Cert. Ex. B ("Freier Cert. Ex. B").  In its opposition to the Order to Show Cause, Dow Jones addressed its belief that Plaintiff was not subject to the CBA, asserting that "[t]o the extent that Plaintiff is referring to the grievance procedure set forth in Dow Jones's collective bargaining agreement with the [IAPE] . . . [Plaintiff]

was not covered by the collective bargaining unit and had no right to access the grievance procedure," and that "[t]o the extent that Plaintiff is seeking access to the grievance procedures set forth in Dow Jones' CBA with IAPE, his claims fair no better." *See* Def.'s Opp. Br. to Pl.'s Order to Show Cause at 1–2, 9, *located at* Freier Cert. Ex. C ("Freier Cert. Ex. C").

On May 5, 2014, during oral argument on Plaintiff's Order to Show Cause, Plaintiff stated for the first time that he was alleging a violation of ERISA and relying upon Dow Jones's CBA with the IAPE. This allegation also appeared in Plaintiff's reply brief served on the same day. When Plaintiff's counsel told the Court that this was "always an ERISA case," the Court expressed its surprise, stating, "Really? It seems – that seems to be – it's a surprise to me and it's a surprise to my adversaries." *See* Transcript of Oral Argument for Order to Show Cause ("Oral Argument") at 10:19–22, *located at* Freier Cert. Ex. D. When Plaintiff's counsel argued that an ERISA claim was clear from the totality of the facts in the complaint, the Court brought up the drafting of the complaint, asking, "Would you agree that the pleading, the verified complaint could have been clearer in terms of what statute or statutes this was being brought under?" *Id.* at 12:22–25. Plaintiff's counsel answered, "Absolutely, Judge." *Id.* at 13:1. The Court went on: "This is a very brief complaint, which on the four corners of it, you would really have a lot of speculation as to whether or not there was any ERISA claim that was brought and, now, the argument, the ERISA argument is in connection with a reply that was sent and received this morning." *Id.* at 13:16–21. .

During oral argument, the Court denied Plaintiff's Order to Show Cause, and ordered Plaintiff to file an Amended Complaint by May 19, 2014 if he intended to pursue an ERISA claim. Dow Jones was served with this Amended Complaint on May 19, 2014, in which Plaintiff alleges a claim for access to the IAPE grievance procedure pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Dow Jones removed the action to this Court on May 29, 2014, alleging that Plaintiff's ERISA claim created a federal question pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §

1441.  Defendant then moved to dismiss the action.  Plaintiff has opposed this motion, and has filed a motion to remand, in which Plaintiff argues that removal to this Court was improper because it was untimely under 28 U.S.C. § 1446.

**II.     Discussion**

    **A.     *Timeliness of Defendant's Removal***

Plaintiff has moved to remand this action to the Superior Court of New Jersey, arguing that Defendant did not remove the action within thirty days of the filing of his original Complaint.  Specifically, Plaintiff asserts that Defendant Dow Jones's removal is untimely either because the original Complaint demanded "that Dow Jones grant [Plaintiff] access to its grievance proceedings set forth in the union contract between Dow Jones and IAPE" and because Defendant Dow Jones "took the position that Plaintiff's claims were, either, preempted by Section 301 of the LMRA, or were in actuality mislabeled hybrid Section 301 claims (a federal claim)."  Pl.'s Remand Br. at 6.  Plaintiff argues that the doctrine of complete preemption permitted Defendant to remove the action under either circumstance, and therefore Defendant's removal on May 29, 2014, was untimely.  Defendant opposes this remand, arguing that it removed the matter within thirty days because a basis for removal did not exist until—at the very earliest—the date of the filing of Plaintiff's Reply to the Order to Show Cause and the oral argument for the Order to Show Cause.  According to Defendant, it was only then that it was aware that Plaintiff was asserting an ERISA claim, thereby triggering the presence of a federal question on which jurisdiction in this Court could be premised.

Typically, removal of an action filed in state court is proper "only when plaintiff's well-pleaded complaint raises issues of federal law."  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.").  Because of the well-pleaded complaint rule, "[t]he fact that [a plaintiff's] state law

6

claims may be preempted by federal law is insufficient to confer federal question jurisdiction." *Dawson v. Ciba-Geigy Corp., USA*, 145 F. Supp. 2d 565, 568 (D.N.J. 2001) (citing *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 353 (3d Cir. 1995)).  In other words, "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under a [federal statute] does not establish that they are removable to federal courts."  *Caterpillar Inc.*, 482 U.S. at 393.

There is, however, a corollary to the well-pleaded complaint rule.  Known as the doctrine of "complete preemption," this jurisdictional doctrine creates an exception to the general rule that federal preemption only provides a federal defense, and does not permit removal.  Complete preemption allows for the removal even where a federal question does not appear on the face of the well-pleaded complaint in certain circumstances where "the preemptive force of federal law is so powerful that it completely displaces any state law cause of action, and leaves room only for federal law for purposes of the 'well-pleaded complaint' rule.  *Dawson*, 145 F. Supp. 2d at 568–69 (citing *Metropolitan Life Ins.*, 481 U.S. at 63–65).  The complete preemption corollary to the well-pleaded complaint rule is applied in cases raising claims preempted by § 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.S. § 1132(a), and by § 301 of the Labor Management Relations Act ("LMRA"), 29 U. S. C. § 185.  *See Caterpillar*, 482 U.S. at 393; *Pascack Valley Hospital v. LOCAL 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400–02 (3d Cir. 2004).

Generally, in order for a notice of removal to be timely, a defendant must remove the case within thirty days after the initial complaint is received by the defendant.  *See* 28 U.S.C. § 1446(b). If the complaint cannot be removed based on the substance of an initial complaint, "a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).  District courts, however, have

7

remanded cases as untimely where a federal question arose in an initial complaint in the form of federal preemption of a state law claim.  *See Costa v. Verizon New Jersey Inc.*, 936 F. Supp. 2d 455, 464 (D.N.J. 2013); *Flowerette v. Heartland Healthcare Ctr.*, 903 F. Supp. 1042, 1044 (N.D. Tex. 1995) (finding that removal was untimely where claims in an original complaint "related to" an employee benefit plan, despite the complaint not specifically referencing ERISA).

Plaintiff first argues that its original Complaint demanded that Dow Jones permit Plaintiff to access its grievance proceedings as set forth under the CBA, and therefore his original claims were preempted by ERISA at the initial pleading stage.  This argument, however, completely misstates the content of the original Complaint.  The original Complaint contains no reference to a collective bargaining agreement, but rather only references Plaintiff's desire to access an unspecified "dispute resolution [*sic*] of Dow Jones."  *See* State Court Compl.  There is no way that such a vague reference to an unidentified dispute resolution process could have conveyed the existence of a federal question to Defendant Dow Jones.  *Compare Queen v. Dobson Power Line Const. Co.*, 414 F. Supp. 2d 676, 680 (E.D. Ky. 2006) (holding that removal was untimely where it was "discernable" from the original complaint that ERISA might preempt plaintiff's claims); *Flowerette,* 903 F. Supp. at 1044 (N.D. Tex. 1995).  Indeed, Plaintiff's counsel has already admitted that the initial Complaint was vague and unclear with regards to which statute Plaintiff's claim was being brought under.  *See* Ex. D at 12:22–13:1.  Accordingly, the thirty day time limit was not triggered by Plaintiff's original Complaint.

Plaintiff, however, argues that Defendant was on notice that he was making a claim under LMRA—even though Plaintiff's Amended Complaint contains no claim under the LMRA, but rather purports to bring a claim under ERISA.  Plaintiff points to Defendant's brief filed in opposition to his Order to Show Cause and to Defendant's Notice of Frivolous Litigation, in which Defendant asserts that Plaintiff has no plausible claim under Section 301 of the LMRA.  Plaintiff,

relying heavily on the decision in *Costa*, argues that these arguments "confirm" that Defendant knew that Plaintiff's claims concerned rights set forth in the collective bargaining agreement. A review of these documents, however, shows that Defendant was asserting all possible defenses to Plaintiff's Complaint, which does not clearly allege *any* state or federal claim. In fact, in both its Notice of Frivolous Litigation and its Opposition brief, Defendant clearly informs Plaintiff that it was "not [Defendant's] understanding that [Plaintiff] was asserting that Plaintiff should be entitled to the benefits under any collective bargaining agreement . . . ." *See* Freier Ex. B. The crux of Defendant's arguments in both these documents, rather, is its belief that Plaintiff was not an employee of Dow Jones and that, even if he was an employee, Defendant has no dispute resolution process for non-union employees and Plaintiff has failed to identify any other contractual obligation by Dow Jones that granted him access to any sort of dispute resolution process. *See* Freier Exs. B, C. Because the original Complaint was so vague, it was impossible for Defendant Dow Jones to know if Plaintiff was seeking access to the CBA or to a different Dow Jones process. *See id.* Defendant's cautiousness in presenting any possible defense to the poorly drafted and pled initial Complaint cannot fairly be said to have triggered the thirty day time limit under 28 U.S.C. § 1446.

This finding is only furthered by *Costa*, on which Plaintiff heavily relies. In *Costa*, the plaintiff had filed an amended complaint in state court which included claims for breach of contract, wrongful discharge, and breach of the covenant of good faith and fair dealing. This amended complaint did not explicitly reference the plaintiff's union or the collective bargaining agreement; in fact, it was only when the plaintiff filed a second amended complaint that this collective bargaining agreement and the plaintiff's union membership were explicitly referenced. The Court, however, found that the defendant was on notice of the plaintiff's union membership and collective bargaining agreement at the time of plaintiff's first amended complaint, and therefore knew that the state contract and tort claims were subject to the doctrine of complete preemption as proscribed by

9

the § 301 of the LMRA. That Court pointed out that the defendant had filed a brief in opposition to the plaintiff's request to file the first amended complaint, in which the defendant explicitly noted that the terms and conditions of plaintiff's employment were governed by the CBA between the plaintiff's union and the defendant. *See Costa*, 936 F. Supp. 2d at 465. Here, on the other hand, Plaintiff is not, and has not been, a member of the IAPE; therefore, it cannot fairly be said that Defendant could have been put on notice that Plaintiff's vague allegations were subject to the complete preemption doctrine. This is particularly true in this case, where Plaintiff is not even now asserting a claim under the LMRA, but is rather asserting a claim pursuant to ERISA; accordingly, this Court would effectively be punishing Defendant for not removing this suit based on a claim that Plaintiff apparently never intended to make.

The Court, however, must still ensure that Defendant timely removed this matter. Section 1446 mandates that a defendant has thirty days to remove an action after receiving a "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). District courts in the Third Circuit "have given the term an embracive construction to include a wide array of documents, including letter communications between counsel, deposition testimony, stipulations between the parties, answers to interrogatories, and transcripts." *Costa*, 936 F. Supp. 2d at 464 (internal quotations omitted). Pursuant to this definition, Defendant fairly had notice of Plaintiff's intent to bring his claim under ERISA on May 5, 2014, when Defendant received a copy of Plaintiff's reply brief (in which Plaintiff indicated for the first time that he was bringing a federal claim) and when oral argument on Plaintiff's Order to Show Cause took place. Defendant Dow Jones removed the amended complaint on May 29, 2014, which was well within the thirty day time limit mandated by § 1446. Accordingly, Defendant timely removed the matter to this Court. Plaintiff's motion to remand this matter to the Superior Court of New Jersey is, therefore, denied.

**B.**     *Defendant's Rule 12(b)(6) Motion*

   1.     *Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the Plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit has required a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. 678–79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

11

678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Generally, a district court may not consider matters extraneous to the complaint when determining a Rule 12(b)(6) motion to dismiss. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). This means that the district court relies on "the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A district court may, however, appropriately consider "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Angstadt v. Midd–West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004). Accordingly, the Court may appropriately consider the CBA, as it is referenced in the FAC and forms the basis for Plaintiff's claim for benefits under ERISA, without converting this Motion into one for summary judgment.

      2.     *Analysis of Plaintiff's FAC*

In his FAC, Plaintiff seeks access to the grievance procedure set forth in the CBA Dow Jones has negotiated with the IAPE, arguing that a denial of access to this grievance procedure has deprived him of benefits due to him under an employee benefit plan in violation of Section 502(a)(1)(B) of ERISA. Under Section 502(a)(1)(B), a civil action may be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Accordingly, in order to state a claim, Plaintiff must establish that he is seeking relief under an ERISA-covered employee benefit plan and that he was a participant entitled to receive benefits under the plan. Defendant has moved to dismiss this Complaint, arguing that Plaintiff has failed to establish either condition.

The precise coverage of ERISA is not clear from the terms or language of the Act. *Massachusetts v. Morash*, 490 U.S. 107, 113 (1989*)*.  Rather, it covers "employee benefit plans," which are defined as either plans that are "an employee welfare benefit plan or employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3).  An employee welfare benefit plan is defined as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).[2]

29 U.S.C. § 1002(1).  Regulations issued by the Secretary of Labor makes clear that "only plans which provide benefits described in Section 3(1)(A) of [ERISA] or in Section 201(c) of the [LMRA] . . . constitute welfare plans."  29 C.F.R. § 2510.3-1(a)(2).

Plaintiff, in his FAC, appears to assert that the grievance procedure contained within the CBA is itself an employee welfare benefit plan.  While courts have struggled to determine what constitutes an "employee benefit plan" under ERISA, it is established that "ERISA does not purport to cover all programs that benefit employees." *Sherrod v. General Motors Corp.*, 33 F.3d 636, 639–39 (6th Cir. 1994); *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7 (1987) ("ERISA's pre-emption provision does not refer to state laws relating to 'employee benefits,' but to state laws relating to 'employee benefit plans' . . . .").  Accordingly, when considering whether or not a particular "plan" constitutes an "employee welfare benefit plan," the Supreme Court has

---

[2] The benefits described "in section 186(c) of this title" refer to Section 302(c) of the LMRA, and has the effect of "include[ing] within the definition of 'welfare plan' those plans which provide holiday and severance benefits, and benefits which are similar." 29 C.F.R. § 2510:3-1(a)(3); *see also Morash*, 490 U.S. at 113 n. 8 (explaining that the benefits in section 186(c) include "pooled vacation, holiday, severance or similar benefits").

13

emphasized that the legislative intent of ERISA, which was enacted to "safeguard employees from abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits," is important. *Morash*, 490 U.S. at 112 (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15 (1987)).  Therefore, when determining whether or not a "plan" is covered under ERISA, courts look to whether "the structure of the plan' presents a risk of such abuse or mismanagement." *Farley v. Shaw's Supermarkets, Inc.*, 497 F. Supp. 2d 23, 28 (D. Mass. 2007) (quoting *Morash*, 490 U.S. at 112).  A distinguishing feature of the types of benefits contemplated by the definition of "employee welfare benefit plan" are those which "accumulate over a period of time and are payable only upon the occurrence of a contingency outside of the control of the employee." *Morash*, 490 U.S. at 115–16.  Other courts have also considered factors such as whether the employee benefit requires an administrative scheme to execute. *Sherrod*, 33 F.3d at 638–39; *Fort Halifax Packing*, 482 U.S. at 11–12.

Considering these factors, a grievance procedure does not constitute an "employee benefit plan" covered by ERISA.  A review of the statutory language and the regulations reveal no reference to grievance procedures.  Plaintiff asserts in his FAC that the grievance procedure provides plan participants an unemployment benefit. *See* FAC ¶ 30.  This assertion, however, ignores the reality that the grievance procedure contained within the CBA is not strictly an unemployment benefit, but is used for any type of contract violation.  For example, the IAPE may use the grievance process to grieve issues involving contractual wage payments or increases, or the enforcement of a union security clause.  Further, the grievance procedure presents no risk of the type of abuse or mismanagement that ERISA was enacted to prevent. *See Morash*, 490 U.S. at 112–15.  Indeed, as the grievance procedure is not funded at all, it is clearly not the type of benefit that was contemplated by the definition of an "employee welfare benefit plan."  Therefore,

Plaintiff's argument that the grievance procedure is covered by ERISA goes beyond the intended scope of the law and must be rejected.

In his opposition, Plaintiff appears to assert two new arguments regarding the existence of an applicable employee welfare benefit plan. The first is that the grievance procedure in the CBA is part of a welfare benefit plan because ERISA regulations require its existence for resolving benefit disputes. *See* Pl.'s Opp. Br. at 12. Through this claim, Plaintiff implicitly asserts that the CBA itself is an employee welfare benefit plan, apparently because it contains references to plans that could be construed as employee welfare benefits plans. This assertion is incorrect. Simply because a collective bargaining agreement refers to employee welfare benefit plans, or establishes such plans, does not transform the entire CBA (or its other provisions) into an employee welfare benefit plan under ERISA. To allow for such an interpretation would grossly expand coverage under ERISA beyond its intended scope. In support of his argument, however, Plaintiff cites to 29 C.F.R. § 2560.503-1(b)(6), which regulates employee welfare benefit plans "established and maintained pursuant to a collective bargaining agreement." This regulation, however, merely establishes that the mandatory claim procedure for employee welfare benefit plans can be set forth in a collective bargaining agreement. It does not say that collective bargaining agreements are in and of themselves qualified employee welfare benefit plans.

Plaintiff also asserts for the first time in his opposition brief that he is entitled to a determination as to his right to severance pay. Plaintiff asserts that severance pay constitutes an employee benefit plan, and therefore, pursuant to the ERISA regulations, he is entitled to access to a grievance and arbitration procedure as part of the plan in the event of a benefits denial. As an initial matter, this argument is not contained within the FAC, and, accordingly, cannot appropriately form the basis of any of his claims nor be considered by a court in determining the sufficiency of an amended complaint under Rule 12(b)(6). *See, e.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 201–

02 (3d Cir. 2007); *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). However, even if Plaintiff had included this claim within his FAC, it would still fail for the very simple reason that, in order to be entitled to the benefits of an ERISA plan, Plaintiff had to be a plan participant. Here, Plaintiff is not eligible for any of the benefits under the CBA (including the right to severance pay) because he was not an IAPE bargaining unit member, and therefore not a "participant" as defined by ERISA.

Under ERISA, a participant is defined as "any employee or former employee, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization." 29 U.S.C. § 1002(7). In order to establish participant status, a plaintiff must establish (1) that he was a common law employee; and (2) that he is "according to the language of the plan itself, eligible to receive a benefit under the plan." *Bauer v. Summit Bancorp*, 325 F.3d 155, 160 (3d Cir. 2003) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24 (1992)). If a plaintiff fails to establish either prong, then he "lacks standing to bring a claim for benefits under a plan established pursuant to ERISA." *Id.*

Here, even assuming that Plaintiff can be considered a common law employee of Dow Jones, he is not eligible to receive a benefit under the terms of the plan—either for severance benefits or for access to the grievance procedure under the CBA. The CBA includes a union security clause, which requires all employees in union eligible roles to play union dues or an equivalent administrative fee. In exchange, the eligible employees are entitled to the terms and conditions of employment negotiated by the IAPE and set forth in the CBA, including the grievance procedure and severance benefits. If employees fail to pay dues or fees, Dow Jones can terminate their employment. *See* CBA at 32, 34–35. Here, Plaintiff never paid union dues or fees, nor does

16

he allege that he did.[3]  Therefore, he was not an IAPE bargaining unit member, and is consequently not a plan "participant."  Plaintiff, accordingly, lacks standing[4] to bring a claim for benefits (whether it be for severance benefits or for access to the grievance procedure) pursuant to ERISA.

Overall, Plaintiff aims to bring a claim pursuant to Section 502(a)(1)(B) of ERISA.  Under his FAC, Plaintiff has failed to allege that he is seeking relief under an ERISA-covered employee welfare benefit plan, because the grievance procedure under the CBA, as well as the CBA itself, do not qualify as employee welfare benefit plans.  In his opposition, Plaintiff argues for the first time that he was denied severance benefits and is entitled to access to the grievance procedure under ERISA regulations.  Even if the Court were to consider these allegations, Plaintiff is not an IAPE bargaining unit, and the terms of the CBA do not apply to him.  Accordingly, he cannot be considered an eligible "participant" under ERISA.  Consequently, Defendant's motion must be granted.

IV.   Conclusion

For the foregoing reasons, Plaintiff's Motion to Remand is denied.  Defendant's Motion to Dismiss is granted.  An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: January 29, 2015

---

[3] Therefore, if Plaintiff was an employee of Dow Jones (a factual issue that the Court need not resolve—nor can resolve—at this stage of the proceedings), he would have faced termination in accordance with the union security clause and would not have had recourse to the grievance procedure or to severance pay.

[4] Furthermore, even if Plaintiff had standing under ERISA as a plan participant, only Dow Jones and the IAPE are parties to the CBA.  Under the terms of the CBA, the IAPE has the exclusive right to bring grievances on behalf of its members.  *See, e.g.*, CBA at 27.  Courts have found that such a provision in a collective bargaining agreement means that an employee may not bring a suit seeking the resolution of disputes arising under the collective bargaining agreement.  *See, e.g. Adams v. Crompton & Knowles Corp.*, 587 F. Supp. 561, 562 (D.N.J. 1982) (citing *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union*, 629 F.2d 1204, 1208 (7th Cir. 1980)); *see also McNair v. United States Postal Service*, 768 F.2d 730, 735 (5th Cir. 1985).  Accordingly, Plaintiff has no standing to bring a grievance on his own behalf.